LAUSON, Respondent, vs. TOWN OF FOND DU LAC, Appellant.

*November 12—December 7, 1909.*

*Highways: Injuries to travelers: Automobiles: Negligence of driver:*
*Imputed negligence: Lights.*

1. An occupant of a private automobile cannot recover for an injury
   caused by a defect in the highway if the negligence of the driver
   contributed to the accident.
2. The driver of an automobile who, while traveling on a dark, rainy
   night over a straight stretch of strange country road, drives his
   machine at such a rate of speed that he cannot bring it to a
   standstill within the distance that he can plainly see objects or
   obstructions ahead of him, is not exercising ordinary care.
3. Independent of any statute, it is negligence to run an automobile
   on a highway at night without sufficient lights to enable the
   driver to see objects ahead of him in time to avoid them.
4. The lights which, under sec. 1636—52, Stats. (Supp. 1906), are to
   be displayed on an automobile driven on a highway at night
   are not required solely for the protection of travelers other than
   those in the automobile.
5. The rule that it is not negligence to drive horses over a highway
   on a dark night without lights should not be extended to auto-
   mobiles.

APPEAL from a judgment of the circuit court for Fond du
Lac county: E. RAY STEVENS, Judge. *Reversed.*

Action to recover damages for injuries alleged to have been
sustained by reason of a defect in a highway. The plaintiff
was riding in an automobile driven by one Robert Hippe, on
the main highway between the cities of Waupun and Fond du
Lac. A culvert in the road was being replaced, leaving an
opening therein about eight feet in width and nine feet in
depth. Barriers were erected on either side of the opening,
such barriers consisting of a single sixteen-foot fence board
extending across the highway and nailed to posts on either
side. There was some dispute in the testimony as to the dis-
tance the barriers were placed from the opening; the testi-
mony of the plaintiff tending to show that it was but twenty-

four feet distant, while that of the defendant tended to show
that it was forty-three feet. The accident occurred about 10
o'clock on a dark, rainy night. The automobile ran through
the barrier and into the opening, injuring the plaintiff. It
was running at a speed not to exceed eight miles an hour. It
carried but one headlight, which was tilted down somewhat so
as to throw the light into the wheel tracks. From the testi-
mony it appears that the driver could not see objects more
than ten or twelve feet ahead of him, and that at the speed he
was proceeding he could not bring the machine to a standstill
within less than fifteen or twenty feet. The barriers were
about four feet above the surface of the road. The alleged
negligence of the town consisted in its failure to place a light
around the opening or to afford any protection to travelers ex-
cept such as might be afforded by the barriers that were
erected. From a verdict and judgment in favor of the plaint-
iff defendant brings this appeal.

· *Maurice McKenna,* for the appellant.

*J. E. McMullen,* for the respondent, to the point that the
purpose of the requirement that an automobile running in the
dark shall have a headlight burning is solely to give warning
to others approaching in the opposite direction, cited *Wright
v. Crane,* 142 Mich. 508, 106 N. W. 71; *Cook v. Fogarty,*
103 Iowa, 500, 72 N. W. 677; *McFern v. Gardner,* 121 Mo.
App. 1, 97 S. W. 972; *Bennett v. Busch,* 75 N. J. Law, 240,
67 Atl. 188.

Barnes, J. The defendant seeks to defeat recovery on the
ground that the driver of the automobile was guilty of con-
tributory negligence, and that the court should have so de-
cided as a matter of law. The automobile in question was a
private conveyance, and if its driver failed to exercise ordi-
nary care, and such failure contributed to produce the injury
complained of, the plaintiff cannot recover. *Ritger v. Mil-
waukee,* 99 Wis. 190, 74 N. W. 815; *Prideaux v. Mineral*

*Point,* 43 Wis. 513; *Otis v. Janesville,* 47 Wis. 422, 2 N. W. 783; *Olson v. Luck,* 103 Wis. 33, 79 N. W. 29; *Lightfoot v. Winnebago T. Co.* 123 Wis. 479, 102 N. W. 30. The question for this court to solve is whether the driver of an automobile, who on a dark, rainy night is traveling over a straight stretch of strange country road, is exercising ordinary care if he drives his machine at such a rate of speed that he is unable to stop within a distance that is within the clear range of his vision. Stated in another way, if he can see objects but ten feet ahead, while he cannot stop his car in less than twenty feet, is he using ordinary care? If not, and injury results from his negligent act, neither he nor his passengers, if the conveyance be a private one, can recover damages for such injury.

Self-propelling machines of great weight and high power have come into general use in the past few years. They are rightfully accorded the same privileges in the use of our highways that are accorded to other vehicles. When driven at a reckless rate of speed they are a source of constant menace to their occupants and to the traveling public, which has not and cannot abdicate its right to use our roads. What may be a moderate rate of speed under some circumstances may be a reckless rate under other conditions.

The driver of every automobile in a city knows that streets are frequently torn up for the purpose of repairing or rebuilding them, and for the purpose of laying water and sewer pipes and for laying gas mains, conduits for carrying electric wires, and such like, and that repairs on such pipes, mains, and conduits must be frequently made, as well as connections with private consumers. He further knows that children, pedestrians, bicycle and motorcycle riders, street cars, and passengers carried by horse power are to be found on the streets in great numbers and frequently huddled closely together. The driver on a country road knows that bridges and culverts must be rebuilt; that highways must be repaired; that wash-

·outs occasionally occur; that live stock roam about the roads unattended; that travelers on foot, on horseback, and in various kinds of vehicles are found using the highways at all seasons of the year and at all times of the day and night. Such a driver has no right to expect and does not expect a free and unobstructed right of way over a well-defined track, as does the engineer of a locomotive or even the motorman of an ·electric car.

The automobile has created a new peril in the use of our public highways; a peril that unfortunately has been greatly ·enhanced by the recklessness of drivers who propel such machines with the speed of railway trains along crowded thor·oughfares. Some rule consonant with the public safety, and not unduly harsh or restrictive upon the users of motor cars, must be evolved to meet a situation which has recently arisen. No case presenting a similar state of facts has been cited by counsel.

It seems to us, and we decide, that the driver of an automobile, circumstanced as was the driver of the car in which the plaintiff was riding, and operating it under such conditions as he operated his machine on the night of the accident, is not exercising ordinary care if he is driving the car at such a rate of speed that he cannot bring it to a standstill within the distance that he can plainly see objects or obstructions ahead of him. If his light be such that he can see objects for only a distance of ten feet, then he should so regulate his speed as to be able to stop his machine within that distance, and if he fails to do so, and an accident results from such ·failure, no recovery can be had. This, it seems to us, is the minimum degree of care that should be required. Circumstances might arise where it would be reckless to drive at such ·a rate of speed, or even at a rate approximating it. We do not ground this rule on the fact that we have a statute requiring automobiles to carry reasonably bright lights while being op·erated during the hours of darkness. Independent of any

statute, and considering the character of these machines, we hold it would be negligent operation to run them without sufficient lights to enable the driver to see objects ahead of him in time to avoid them. Such is substantially the rule adopted by the supreme court of Connecticut in a well-considered case in reference to the running of a street car. The court said:

"When running at night, it must be provided with such means of illumination as may be requisite, in connection with the light, if any, to be expected from other sources, to enable the motorman to see far enough ahead to do whatever ordinary care may demand in order to avoid a rear-end collision with any other vehicle upon the railway track. The speed with which any vehicle can be driven over a highway at night must be determined partly in view of the distance ahead at which travelers upon or approaching the same highway would become visible." *Currie v. Consolidated R. Co.* 81 Conn. 383, 71 Atl. 356.

We perceive no reason why an automobile should not be driven with the same degree of care required in the case of a street car, and there are many reasons why a greater degree of care should be required.

Nor can we countenance the proposition urged upon us that lights are required only for the protection of travelers other than those riding in the automobile. It is true that the evidence in this case showed that a party traveling in an opposite direction from that in which the automobile was proceeding could see the light plainly a quarter of a mile distant and in ample time to leave the traveled track. But this testimony does not prove anything of value. The other traveler is not obliged to yield the entire track, and the nature of the road might well be such that he could not do so, and, if he did, a slight swerving of the machine to avoid a rut or a stone might result in a collision. Perhaps almost as many persons, and vehicles drawn by horses, are overtaken and passed by automobiles as are met, and, as to such, a dim light might afford no protection whatever, or at least not sufficient warning to

avoid a collision, if they were compelled to rely on what they could see to avoid it.

Our attention is called to cases in this court which hold that it is not negligence to drive horses over a highway on a dark night without lights. *Milwaukee v. Davis,* 6 Wis. 377; *Hart v. Red Cedar,* 63 Wis. 634, 24 N. W. 410; *Brennan v. Friendship,* 67 Wis. 223, 29 N. W. 902; and *Bills v. Kaukauna,* 94 Wis. 310, 68 N. W. 992, are cases in which the rule of law is so declared. The doctrine of those cases should not be extended to automobiles. A team of horses, if permitted to do so, will ordinarily follow the traveled track, even where it is so dark that their driver may be wholly unable to distinguish it. Under such circumstances an automobile could hardly be run a rod without running into a ditch, except by sheer good luck. A horse will ordinarily stop when a barrier is reached. The machine tries conclusions with it, and brushes it aside if not strong enough to resist the momentum hurled against it. Driving an automobile over a country road on a dark, rainy night without light would indicate a well-defined intent on the part of the driver to commit suicide, rather than the exercise of ordinary care.

The court should have changed the answer to the third question in the special verdict from "No" to "Yes," and rendered judgment on the verdict as so modified in favor of the defendant.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to modify the verdict as above indicated, and to render judgment dismissing the complaint on the verdict as modified.