KLEIST, Respondent, vs. COHODAS and others, Appellants.

*April 4—May 8, 1928.*

*Automobiles: Law of the road: Insufficient lights: Violation of statute regulating use of highways: Contributory negligence.*

Where the driver of an automobile was driving at night at such a speed and under such circumstances that he was unable to see a large truck standing on the highway within such a distance as to permit him to stop before a collision occurred, he has so violated the law regulating his own use of the highway that if such violation is a proximate cause of the injury he received because of the collision there can be no recovery. [*Lauson v. Fond du Lac,* 141 Wis. 57, adhered to.]

APPEAL from a judgment of the municipal court of Outagamie county: THEODORE BERG, Judge. *Reversed.*

This action was commenced by plaintiff April 12, 1927, against the individual defendants, copartners, and the *United States Fidelity & Guaranty Company,* a foreign corporation, to recover for injuries resulting from plaintiff's automobile colliding with a truck of the copartners in November, 1926. Trial was had June 3d, and upon the verdict judgment was entered July 9, 1927, for the amount thereof, $5,550. Defendants appeal.

The material facts, concerning which there is substantially no dispute, are: that after dark on November 16, 1926, the driver of defendants' two-ton truck stopped the same on the right-hand side of an eighteen-foot concrete highway near Appleton. The body of the truck was seven to eight feet high, with a six-foot box covered with brown canvas and with a dark curtain hanging down the back and its surface quite muddy. The kerosene tail light was not yet lighted nor the front lights, at which the driver was engaged at the time of the collision. The night was dark and the snow quite heavy. Plaintiff, driving his Chevrolet coupé northeasterly on this highway, stopped at an arterial crossing two blocks below the place and then proceeded onward at twenty to twenty-three miles per hour. He did not see the unlighted truck until five or six feet away from it, giving as a reason for not seeing it before then that the color of the truck was practically the same as the atmosphere.

He saw the lower part of the wheels of the truck first; there were no cars coming from the opposite direction; the lights on his car showed at least twenty feet ahead, and his speed was such that he was unable to stop after seeing the truck.

By special verdict the jury found the truck driver was guilty of want of ordinary care in so parking the truck and that such was the proximate cause of the injury, and assessed damages to the automobile of $550 and to plaintiff of $5,000.

They also found that there was not a failure to exercise ordinary care in the operation by plaintiff of his automobile (a) with respect to having it under proper control; (b) with respect to keeping a proper lookout for other vehicles.

Defendants requested a special verdict after the plaintiff rested his case and made a motion for a directed verdict at the close of the testimony, and afterwards moved to change the answers to the questions as to defendants' negligence being the proximate cause of the injury and as to plaintiff's contributory negligence.

For the appellants there was a brief by *Lines, Spooner & Quarles* of Milwaukee (*Benson & Bosser* of Appleton, attorneys), and oral argument by *Charles B. Quarles*.

For the respondent there was a brief by *Morgan & Johns* of Appleton, and oral argument by *J. L. Johns*.

ESCHWEILER, J.   Upon the undisputed facts in this case we are of the opinion that judgment should have been entered in favor of defendants dismissing the complaint.

At the time of the accident the state law of the road, sub. (1) and (2), sec. 85.13, forbade—from thirty minutes after sunset until thirty minutes before sunrise—any automobile or motor vehicle to be driven upon or occupy any public highway in this state unless such motor vehicle is provided "with sufficient lights, of such design and so adjusted and operated as to render the use of the highway by such vehicles safe for all the public;" and

"(2) The minimum requirements for head lamps on any automobile or other similar motor vehicle, except motorcycles, while being driven upon the highway, shall be such as to enable the driver to clearly distinguish a person, vehicle or other substantial object two hundred feet ahead, and the design, adjustment and operation of such head lamps shall be such as to avoid dangerous glare or dazzle."

By sub. (3) of sec. 85.22, Stats., prescribing penalties in the same chapter, it was provided that a person violating

sec. 85.13, *supra,* shall be fined not less than $5 nor more than $100, or imprisoned not less than ten days nor more than three months, or both.

Not here determining whether the driver of defendants' truck violated the provisions of sec. 85.02 prohibiting the parking on highways so as to interfere with the free passage of vehicles on such highways except when making absolutely necessary repairs; or sec. 85.12, prohibiting the unreasonable obstructing or impeding by one of the right to travel on the same highway by another; or some common-law duty towards the plaintiff, we are compelled to hold that the plaintiff's own conduct was a violation on his part of the duty imposed upon him by law and that it had a direct causal connection with the injury so as to prevent his right to recover.

We are so holding upon what we consider has been for some time the public policy of the state based upon the many precise and particular statutory regulations and the rules of law as declared in former decisions of this court, which, though often and vigorously challenged to be overruled or repudiated, we must still decline so to do and feel still bound to follow.

The rule under which we are reversing this case and directing the judgment for the defendants is that very distinctly and squarely declared in the case of *Lauson v. Fond du Lac,* 141 Wis. 57, 123 N. W. 629. In that case the plaintiff drove his automobile at 10 o'clock on a dark, rainy night, the car carrying but one headlight, so arranged at that time that the driver could not see objects more than ten or twelve feet ahead of him, and proceeding at a speed not over eight miles per hour, but such that he could not bring the machine to a standstill within less than fifteen or twenty feet. The injury was caused by his driving into an opening on the highway nine feet long and eight feet wide, dug for a culvert; no lights were placed there, and it was protected only by a single sixteen-foot fence board extending across and

at about the height of four feet. It was there directly held
(p. 60) that operating an automobile under the conditions
presented that night he was not exercising the ordinary care
required of him, if he drives the car at such a speed that
he cannot bring it to a standstill within the distance that he
can plainly see objects or obstructions ahead of him; that if
his light be such that he can see objects for only a distance
of ten feet, then he must so regulate his speed as to be able
to stop within that distance, and if he fails to do so and an
accident results from such failure no recovery can be had;
that such is "the minimum degree of care that should be
required." This was declared to be the rule independent of
the then statute as to lights, *infra*. The *Lawson Case* also
refused to countenance a proposition there urged that the
lights on such vehicles are required only for a protection to
travelers other than those riding in the vehicle itself (p. 61).
It also expressly recognized the law theretofore held as to
driving horses over a highway on a dark night without lights,
pointing out that such an animal will ordinarily follow a
traveled track or stop when a barrier is reached, but that such
rule could not apply to automobiles.

The *Lawson Case* was decided in December, 1909. It was
cited and recognized in *Anderson v. Sparks,* 142 Wis. 398,
125 N. W. 925 (April, 1910), as controlling on the question
of the exercise of ordinary care by the defendant there, in
driving his automobile, where he ran into the plaintiff who
had stopped his horse a short distance ahead, the defendant
claiming that even with his lights he could not see the plaint-
iff within stopping distance (p. 405). It was referred to in
*Brown v. Milwaukee E. R. & L. Co.* 148 Wis. 98, 103, 133
N. W. 589 (Jan. 1912). It was expressly the ground for
a similar holding in *Pietsch v. McCarthy,* 159 Wis. 251, 254,
150 N. W. 482 (Jan. 1915). In *Raymond v. Sauk County,*
167 Wis. 125, 128, 166 N. W. 29 (April, 1918), it was cited
as stating the recognized rule. It was cited and distinguished

as to the facts presented in *Zimmer v. Schmitt,* 167 Wis. 430, 434, 167 N. W. 739 (May, 1918), a case involving the running into a soft spot on a city street caused by the filling of a trench. In *Yahnke v. Lange,* 168 Wis. 512, 515, 170 N. W. 722 (Feb. 1919), it was declared controlling on the question of defendant's negligence where driving in violation of the then statute as to lights, and where plaintiff was denied recovery because he in turn was driving his milk wagon without the rear light required by ordinance (p. 516). It was referred to again as stating the correct rule in *Johnson v. Prideaux,* 176 Wis. 375, 379, 187 N. W. 207 (March, 1922), involving the driving in a blinding cloud of dust. Again in *Worden v. C. & N. W. R. Co.* 180 Wis. 551, 552, 193 N. W. 356 (May, 1923), it was applied in denying recovery to one who drove into a standing freight car on a highway crossing; and to a similar collision with a freight car obscured by darkness and a cloud of smoke in *Fannin v. M., St. P. & S. S. M. R. Co.* 185 Wis. 30, 32, 200 N. W. 651 (Nov. 1924). In *Yano v. Stott Briquet Co.* 184 Wis. 492, 199 N. W. 48 (Oct. 1924), a violation of this statute in driving with lights extending but twenty feet and thereby causing a collision with a freight car blocking a city street, was held contributory negligence as a matter of law and the *Lauson Case* cited, the court saying as to such a driver (p. 494) that "he was bound to anticipate that there might be some obstruction in the street, and he was also bound to obey the law, which is clear and explicit and without exceptions." In *Shawano County v. Froemming Bros.* 186 Wis. 491, 498, 202 N. W. 186 (April, 1925), it was again made the basis of denying relief where a driver of a truck ran into an excavation in the road. So for over sixteen years the rule of the *Lauson Case, supra,* has repeatedly, and without qualification, been declared the law of this state.

The judicial doctrine so announced by the *Lauson Case* has been in constant accord with the legislative declarations on the same subject.

The statute in force when the *Lauson Case* was decided in 1909 had been enacted by ch. 305 (sec. 6) of the Laws of 1905, becoming 1636—52, Stats. 1911, and requiring a rear red light and at least one lamp in the going direction, and the penalty for its violation (sec. 1636—54) was a ten to twenty-five dollar fine.   By chs. 502 and 690, Laws of 1913, a new section, 1636—52, was substituted, making it unlawful to drive such a vehicle on a public highway at such rate of speed that it cannot be brought to a complete stop within the distance ahead that the driver can, with the lights thereon, in connection with lights from other sources, see an object the size of a person.   By ch. 626 of the Laws of 1919, sec. 1636—52a was created, with the provisions as they existed at the time of the accident and as quoted *supra,* as sec. 85.13 (1), (2), Stats. 1925.

So the statutory progress during all these years has been consistently towards more stringency in the requirements as to such lights as well as an increase in the penalties provided for violations of such regulations.

It may well be noted that, as pointed out in *Yano v. Stott Briquet Co.* 184 Wis. 492, 494, 199 N. W. 48, *supra,* such statute has been held to be without any exceptions in its application on account of atmospheric or any other unusual con-ditions surrounding traffic, for not until by ch. 478 of the Laws of 1927, where there is a substantial rewriting of ch. 85 of the law of the road, are there any statutory suggestions as to whether or not the regulations concerning lights are to be determined under any limited or designated standard, and by what is sec. 85.13 (3b) it is now provided that certain motor vehicles of a width in excess of eighty inches shall carry two clearance lamps on the left side, one in front and one at the rear, displaying a light visible "under normal atmospheric conditions" for a distance of 500 feet, etc.

It is also noteworthy that in *Clemens v. State,* 176 Wis. 289, 308 *et seq.,* 185 N. W. 209 (March, 1922), in which there was a review of a conviction for manslaughter in the

fourth degree where the defendant inadvertently caused the death of a man by running his automobile in violation of the statute here considered (then sub. 1, sec. 1636—52a), his headlight not extending over eighty feet and he colliding with a stationary truck.   In necessarily holding such negligence to be within the manslaughter statute, this court took occasion (p. 312 *et seq.*) to suggest the advisability of some change in legislation to avert the seeming hardship following a violation of such drastic provisions and whereby mere lack of ordinary care could result in a conviction for felony. But in spite of that suggestion no such changes have been made by the legislature, and it is of course beyond our province to do more than uphold the law as it is presently written.

An examination of decisions outside the state on this general subject discloses that the *Lawson Case, supra,* has been often cited and in some jurisdictions vigorously criticised, and what has been suggested as another form for stating our rule, namely, that the driver of an automobile in the nighttime must be able to stop within the radius of his own lights, has been held not to be a proper rule.   Some, as for instance *Morehouse v. Everett,* 141 Wash. 399, 252 Pac. 157 (1926), quoting at length from the *Lawson Case, supra,* and suggesting that that case should be construed to accord with the rule they there declared as meaning no more than that the driver must see any object which an ordinarily prudent driver would have seen, and that such is generally a question for a jury.   The doctrine that such a situation as here presented makes a question of fact for a jury under the emergency doctrine is held in *Hardware Mut. Cas. Co. v. Union T. & S. Co.* 205 Ky. 651, 266 S. W. 362.   In *Kaufman v. Hegeman T. & L. Terminal,* 100 Conn. 114, 123 Atl. 16, refusing to follow the range of vision doctrine, it was held that a driver in the nighttime might travel on the presumption that the highway was not obstructed.

It has, however, been held that it is negligence *per se* to

run a street car on the public highway at a greater rate of speed than permits the stopping of the car within the radius of its own lights. *Chambers v. Princeton P. Co.* 93 W. Va. 598, 117 S. E. 480, 29 A. L. R. 1041, with note and other cases at p. 1045, and citing many cases where consideration was given to the weather conditions at p. 1052.

Cases on both sides of this proposition may be found in 14 A. L. R. note at p. 794; 37 A. L. R. note p. 587; 40 A. L. R. note p. 1243; 44 A. L. R. note p. 1403.

Among recent discussions of this troublesome question, see *Skaug v. Knappins,* 241 Mich. 57, 216 N. W. 403; *Rhoades v. A., T. & S. F. R. Co.* 121 Kan. 324, 246 Pac. 994; *Day v. Cunningham,* 125 Me. 328, 133 Atl. 855.

We deem it unnecessary to further consider what is said for and against the rule of the *Lauson Case* in other jurisdictions. We feel that it is such a rule of law governing so many present-day conditions on our crowded highways that we shall not now change it so far as our decisions are concerned. While it may work hardship in many cases, at the same time it must not be overlooked that it is for the protection of the general public who may occupy the highways as well as for the particular automobile drivers. Thus adhering to the rule announced in the *Lauson Case, supra,* and upon the statutes involved, we again hold that in a case such as was here presented, where the injured driver of an automobile was so driving that he could not see such a large and substantial object as was the truck stopped on the highway, whether lawfully so or not, he himself has violated the law regulating his own use of the highway, and where such violation is clearly, as here, a matter of law, a proximate cause of the injury, it must defeat his right to recover.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the action.